# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

**KA 04-666 consolidated with KA 04-1169**

**STATE OF LOUISIANA**

**VERSUS**

**CAREY LOUIS HOOD**

**********

APPEAL FROM THE
NINTH JUDICIAL DISTRICT COURT
PARISH OF RAPIDES, NO. 267,664
HONORABLE THOMAS MARTIN YEAGER, DISTRICT JUDGE

**********

**BILLY HOWARD EZELL**
**JUDGE**

**********

Court composed of Ulysses Gene Thibodeaux Chief Judge, Billy Howard Ezell, and James T. Genovese, Judges.

**AFFIRMED IN PART; VACATED IN PART AND REMANDED FOR RESENTENCING.**

**James C. Downs**
**District Attorney - Ninth Judicial District Court**
**701 Murray Street**
**Alexandria, LA 71301**
**(318) 473-6650**
**Counsel for: Plaintiff/Appellee**
**State of Louisiana**

**Kenota Pulliam Johnson**
**La Appellate Project**
**P. O. Box 5781**
**Shreveport, LA 71135-5781**
**(318) 524-1024**
**Counsel for: Defendant/Appellant**
**Carey Louis Hood**

**Carey Louis Hood**
**Forcht Wade CC**
**7990 Caddo Drive**
**Keithville, LA 71047**

**EZELL, JUDGE.**

On January 24, 2003, the Defendant, Carey Louis Hood, was charged by a bill of information with one count of possession of cocaine, in violation of La.R.S. 40:967(C) and with one count of simple escape, in violation of La.R.S. 14:110. On February 7, 2003, the Defendant was arraigned and entered pleas of not guilty to the charges.

Subsequently, after a trial by jury, on January 13, 2004, the Defendant was convicted as charged on both counts. Thereafter, on January 20, 2004, the trial court sentenced the Defendant to two-and-one-half years at hard labor on the charge of possession of cocaine and five years at hard labor on the charge of simple escape, with the sentences to run consecutively. On that same date, the State filed a habitual offender bill to which the Defendant pled not guilty. The Defendant was adjudicated a fourth felony offender on June 25, 2004, and his sentences were vacated. Thereafter, on that same date, the trial court sentenced the Defendant to forty years at hard labor without benefit of parole, probation, or suspension of sentence.

The Defendant is now before this court, alleging five assignments of error.

## FACTS

On December 8, 2002, Officer Carla Whitstine, an Alexandria Police Officer, was patrolling Levin Street in Alexandria. As she was driving, she noticed a black male riding a bicycle. As she got closer to him, the Defendant jumped off the bicycle and ran up to a house. At that point the officer was beside the house; she turned on her "alley light" and observed the Defendant bend down beside the house and throw something under the porch. The officer left her vehicle and approached the Defendant to talk to him. By that time another Alexandria Police Officer, Officer Todd Beaman, had arrived for back up and walked the Defendant over to the police

1

cars. Officer Whitstine shined her flashlight under the porch to determine what the Defendant had thrown away. The officer found a plastic baggy with what appeared to be a rock of cocaine. Officer Whitstine radioed Officer Beaman to place the Defendant in handcuffs, which he did without incident. The Defendant was placed in Officer Whitstine's patrol car.

Officer Whitstine drove the Defendant to the jail and parked on the third floor of the parking lot. The officer had the light on in her vehicle and was filling out some paperwork before taking the Defendant to booking. Officer Whitstine testified that she was talking to the Defendant and looking at him in her rearview mirror while she filled out the paper work. After filling out the paper work, the officer removed the Defendant from her patrol car and began to take him into the jail. As they were waiting for the elevator, the Defendant took off running and escaped through the stairwell.

## ERRORS PATENT

In accordance with La.Code Crim.P. art. 920, all appeals are reviewed by the court for errors patent on the face of the record. After reviewing the record, we find one error patent requiring the vacation of the sentence imposed.

The present Defendant was convicted of one count of attempted possession of cocaine and one count of simple escape. At the original sentencing, the Defendant was sentenced to two-and-one-half years for attempted possession of cocaine and five years for simple escape. Subsequently, the Defendant was charged as a fourth habitual offender. At the habitual offender sentencing, the trial court vacated both of the previously imposed sentences and imposed a single sentence of forty years at hard labor without benefit of probation or suspension of sentence. The trial court did not specify which offense or offenses were being enhanced and the habitual offender

2

bill did not designate whether the State intended one or both sentences to be enhanced.

This court addressed a similar situation in *State v. Webster*, 95-605, p.9 (La.App. 3 Cir. 11/2/95), 664 So.2d 624, 630:

> The defendant notes that the trial court did not specify which armed robbery conviction was being enhanced. Nor did the court sentence the defendant on the remaining three convictions. . . .
>
> We agree, that the trial court erred in that the record does not reveal which of defendant's four armed robbery convictions was being enhanced. Additionally, the trial court should have imposed a separate sentence on each of the three remaining convictions. Therefore, defendant's sentence is indeterminate as he was convicted of four counts of armed robbery and only a single sentence was imposed. See *State v. Bessonette*, 574 So.2d 1305 (La.App. 3 Cir.1991); La.Code Crim.P. art. 879. Accordingly, defendant's sentence will be vacated and the case remanded to the trial court for clarification as to which count is being enhanced and for imposition of separate sentences on the remaining three counts. See *State v. Parker*, 593 So.2d 414 (La.App. 1 Cir.1991).

As in *Webster*, we find the sentence imposed in the present case is indeterminate since the Defendant was convicted of two separate counts and only one sentence was imposed.

Since the habitual offender bill does not specify which offense or offenses were to be enhanced, we find the trial court must make such a determination. Enhancement on each separate count would be appropriate if the counts were the result of separate felonies arising out of separate criminal episodes. Enhancement would not be appropriate, however, if the counts were the result of felonies arising out of the same criminal episode. *State ex rel. Porter v. Butler*, 573 So.2d 1106 (La.1991) and *State v. McCurtis*, 00-3080 (La. 11/2/01), 800 So.2d 862.[1] We find it is not apparent on the

---

[1] This court notes that the Louisiana Supreme Court recently rendered *State v. Johnson*, 03-2993, p.5 (La. 10/19/04), 884 So.2d 568,571 wherein the supreme court revisited its holding in *State ex rel. Mims v. Butler*, 601 So.2d 649 (La.1992) (on reh'g) - "that multiple convictions entered on the same day must be treated as a single predicate under the habitual offender law, even when the convictions stem from

face of the record whether the present offenses arose out of the same criminal episode. Thus, we find the Defendant's sentence should be vacated and the case remanded for a determination as to whether enhancement has been sought on one or both offenses. If enhancement is sought on one offense only, the trial court should resentence the Defendant as an habitual offender on that offense and impose a separate non-enhanced sentence on the remaining offense. If, however, enhancement is sought for both offenses, the trial court should determine whether enhancement is appropriate for each offense. *See State ex rel. Porter*, 573 So.2d 1106; *State v. McCurtis*, 800 So.2d 862; and *State v. Johnson*, 03-2993 (La. 10/19/04), 884 So.2d 568. If the trial court determines that enhancement is appropriate for each offense, a separate enhanced sentence should be imposed for each offense.

## ASSIGNMENT OF ERROR NUMBER ONE

The Defendant assigns as error that the evidence, when viewed in a light most favorable to the prosecution, was insufficient to find the Defendant guilty of the charges. The Defendant argues only that the officers misidentified him. In brief the Defendant does not argue that a crime did not occur, but that he was not the person who committed the crime.

With regard to sufficiency of the evidence, this court has held:

> When the issue of sufficiency of evidence is raised on appeal, the critical inquiry of the reviewing court is whether, after viewing the

---

separate and distinct criminal episodes." Finding that the legislature removed the sequential requirement for *predicate* convictions in 1982, the supreme court overruled its holding in *Mims*. We find, however, that the supreme court did not overrule the "single criminal episode" rule as it applies to predicates. The supreme court stated, "There is no statutory bar to applying the law in sentencing for more than one conviction obtained on the same date based on *unrelated conduct*." Id. At 578. (emphasis added). The supreme court specifically noted that the record was clear in the case before it that the "convictions entered on the same date arose from separate and distinct events, occurring on different dates, and not as part of a single criminal episode." *Id.* at 579, n. 4. Accordingly, we find the "single criminal episode" rule still stands.

evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *State ex rel. Graffagnino v. King*, 436 So.2d 559 (La.1983); *State v. Duncan*, 420 So.2d 1105 (La.1982); *State v. Moody*, 393 So.2d 1212 (La.1981). It is the role of the fact finder to weigh the respective credibility of the witness. Therefore, the appellate court should not second-guess the credibility determination of the trier of fact beyond the sufficiency evaluations under the *Jackson* standard of review. *See King*, 436 So.2d 559, citing *State v. Richardson*, 425 So.2d 1228 (La.1983).

*State v. Lambert*, 97-64, pp. 4-5 (La.App. 3 Cir. 9/30/98), 720 So.2d 724, 726-27. In order for the State to obtain a conviction, it must prove the elements of the crime beyond a reasonable doubt. "In order for this Court to affirm a conviction, however, the record must reflect that the state has satisfied its burden of proving the elements of the crime beyond a reasonable doubt." *State v. Kennerson*, 96-1518, p. 5 (La.App. 3 Cir. 5/7/97), 695 So.2d 1367, 1371.

In brief the Defendant argues that he was not the person who committed the crimes. In *State v. Jones*, 02-1176, p. 13 (La.App. 3 Cir. 2/5/03), 839 So.2d 439, 446-47, *writ denied*, 03-886 (La. 11/7/03), 857 So.2d 516, this court quoted the supreme court as follows:

The Louisiana Supreme Court in *State v. Neal*, 00-0674 (La. 6/29/01); 796 So.2d 649, stated:

As a general matter, when the key issue is the defendant's identity as the perpetrator, rather than whether the crime was committed, the state is required to negate any reasonable probability of misidentification. *State v. Smith*, 430 So.2d 31, 45 (La.1983); *State v. Brady*, 414 So.2d 364, 365 (La.1982); *State v. Long*, 408 So.2d 1221, 1227 (La.1982). However, positive identification by only one witness is sufficient to support a conviction. See *State v. Mussall*, 523 So.2d 1305, 1311 (La.1988) (generally, one witness's positive identification is sufficient to support the conviction); *State v. Ford*, 28,724 (La.App.2d Cir.10/30/96), 682 So.2d 847, 849-50, *writ denied*, 99-0210 (La.5/14/99), 745 So.2d 12. . . . The trier of fact makes credibility determinations and may, within the bounds of rationality, accept or reject the testimony of any

5

> witness; thus, a reviewing court may impinge on the "fact
> finder's discretion only to the extent necessary to guarantee
> the fundamental due process of law." *Mussall*, 523 So.2d
> at 1310 (La.1988).

*Id*. at p. 11, 658.

At trial, Officer Carla Whitstine testified that on the night of December 8, 2002, she was on patrol in Alexandria. While on patrol, Officer Whitstine encountered a black male on a bicycle. As she approached the Defendant, he looked back, saw the patrol car, jumped off the bicycle, and ran up beside a nearby house. Finding this behavior suspicious, Officer Whitstine turned on her alley light and shined it on the Defendant. As the Defendant was illuminated, the officer observed the Defendant bend down and throw something under the porch on the house. The officer exited her vehicle to speak with the Defendant.

At some point while Officer Whitstine was talking with the Defendant, Officer Beaman arrived as back up. Officer Beaman placed the Defendant near Officer Whitstine's patrol car while Officer Whitstine investigated what the Defendant threw under the porch. Officer Whitstine shined her flashlight under the porch and found what appeared to be a plastic bag with a rock of crack cocaine inside of it. Upon finding the drugs, Officer Whitstine radioed Officer Beaman to arrest the Defendant and place him in her patrol car.

After placing the Defendant in the back of the patrol car, Officer Whitstine conveyed the Defendant to the jail. Once they arrived at the jail, Officer Whitstine parked near the doors on the third floor of the parking garage, turned on the inside light of the car, and began filling out paperwork. Officer Whitstine testified that she talked to the Defendant and looked at him in the rearview mirror while she filled out the papers. The Defendant told Officer Whitstine that his name was Chris Duberil and stated that his birthday was April 16, 1970.

6

After completing the paperwork, Officer Whitstine removed the Defendant from the vehicle and escorted him through a glass door and to the elevator. As Officer Whitstine reached to push the button to call the elevator, she heard footsteps and turned to see the Defendant fleeing into the stairwell. At some point after the Defendant fled, Officer Whitstine identified a photograph of the Defendant as the man whom she arrested on December 8, 2002.

Officer Todd Beaman testified that he backed up Officer Whitstine on the night of December 8, 2002. Officer Beaman testified that he waited with the Defendant by the patrol car while Officer Whitstine investigated what had been thrown under the porch. At Officer Whitstine's signal, Officer Beaman placed the Defendant in handcuffs. In open court, Officer Beaman identified the Defendant as the man who he waited with and placed handcuffs on the night of December 8, 2002.

Christopher Duberil testified that he was sixteen years old, that he was fourteen years old in December 2002, and that he did not get arrested on December 8, 2002. Mr. Duberil further testified that the Defendant, Carey Louis Hood, was his foster brother. Mr. Duberil stated that Sergeant Rennier came by and Mr. Duberil told Sergeant Rennier that the Defendant may have been using his name.

Sergeant Mike Rennier testified that he was assigned to the intelligence division of the Alexandria Police Department in December 2002. Sergeant Rennier stated that he began looking for Christopher Duberil after Officer Whitstine informed him that a man calling himself Christopher Duberil had escaped from her custody. Sergeant Rennier contacted Christopher Duberil, determined that he was not the male who had escaped from Officer Whitstine and received the name of Carey Louis Hood, the Defendant. Sergeant Rennier obtained a photograph of the Defendant and showed it to Officer Whitstine, who identified him as the man who escaped from her custody.

7

Sergeant Rennier's investigation also determined that the Defendant rides a bicycle in the area where he was arrested.

Officer Clifton Fairbanks testified that on the night of December 24, 2002, he arrested the Defendant, Carey Louis Hood. Officer Fairbanks was patrolling the area of Cottage Street. Officer Fairbanks stated that there is a lot of drug activity in that area, and so someone loitering near a closed store seemed suspicious. The officer exited his vehicle to ask the Defendant a few questions to find out what he was doing, and the Defendant took off running. Officer Fairbanks chased the Defendant down, placed him in handcuffs, and arrested him. After Mirandizing the Defendant, Officer Fairbanks asked the Defendant why he ran. According to Officer Fairbanks, the Defendant responded that he was wanted. Officer Fairbanks testified that the Defendant's birthday is April 17, 1971.

We find the evidence viewed in a light most favorable to the prosecution proves that the Defendant is in fact the person who escaped from Officer Whitstine on the night of December 8, 2002. Both Officer Whitstine and Officer Beaman positively identified the Defendant. The supreme court has held that one witness' positive identification is enough to uphold a conviction where identity of the Defendant is the issue. In addition to the two positive identifications, the State proved that the Defendant is Christopher Duberil's foster brother, that the Defendant's actual birthday is only two digits different from the one given on December 8, 2002, when he escaped, that the Defendant was known to ride a bicycle in the area where he was arrested on December 8, 2002, and that the Defendant acknowledged being wanted when he was apprehended the second time. We find therefore that the evidence viewed in a light most favorable to the prosecution is sufficient to uphold the Defendant's convictions. Thus, this assignment of error is

8

without merit.

## ASSIGNMENT OF ERRORS NUMBERS TWO, THREE AND FOUR

By these assignments of error, the Defendant argues that his sentence of two-and-one-half years for attempted possession of cocaine to run concurrent with a five-year sentence for simple escape were excessive. The sentences which the Defendant contests were vacated, and the Defendant was sentenced as a habitual offender. The Defendant's original appeal, docket number 04-666, was lodged before the Defendant's habitual offender hearing was held. Furthermore, in light of the errors patent review, we vacate the habitual offender sentence and remand the case for re-sentencing. We find, therefore, that these assignments of error have been rendered moot.

## ASSIGNMENT OF ERROR NUMBER FIVE

As his final assignment of error the Defendant alleges that the evidence was insufficient to support his conviction as a fourth felony offender. We find that the Defendant complains only about the information contained in State's exhibit number six. He does not object to any of the other felony conviction information. The Defendant argues that the trial court incorrectly entered into evidence State's exhibit six and incorrectly considered the felony information contained therein as the bill of information contained in the exhibit did not possess the Defendant's fingerprints. We find that even without this felony conviction, the Defendant is still classified as at least a fourth felony offender.

In *State v. Payton*, 02-2899, (La. 3/15/02), 810 So.2d 1127, 1130-31, the supreme court held:

> "To obtain a multiple offender conviction, the State is required to establish both the prior felony conviction and that the defendant is the same person convicted of that felony." *State v. Neville*, 96-0137 (La.App. 4 Cir. 5/21/97), 695 So.2d 534, 538-39, *writ denied*, 97-1637

9

(La.12/12/97), 704 So.2d 1180 (citations omitted). In attempting to do so, the State may present: (1) testimony from witnesses; (2) expert opinion regarding the fingerprints of the defendant when compared with those in the prior record; (3) photographs in the duly authenticated record; or (4) evidence of identical drivers license number, sex, race and date of birth. *See, e.g., State v. Westbrook*, [392 So.2d 1043 (La.1980)]; *see also State v. Curtis*, 338 So.2d 662, 664 (La.1976).

At the habitual offender hearing, the State offered Ray Keith Delcomyn as an expert in fingerprint analysis. Mr. Delcomyn stated that he obtained fingerprints of the Defendant in court on the morning of the habitual offender hearing. Under oath, Mr. Delcomyn testified that he compared the fingerprints of the Defendant taken in court that morning to the fingerprints located on the bills of information that the State entered into evidence. Mr. Delcomyn stated that in his expert opinion the Defendant's fingerprints matched the fingerprints on all of the bills of information.

Accordingly, we find that the State proved that the Defendant was convicted of simple burglary on April 23, 1990; purse snatching on July 8, 1991; simple burglary on July 8, 1991[2]; armed robbery on January 11, 1994; unauthorized entry of an inhabited dwelling on December 7, 2001; theft of goods between $100 and $500 on December 4, 2001; and the present offenses of possession of cocaine and simple escape.

We find that the State proved six felony offenses in addition to the offense the Defendant disputes and the present offenses. The trial court did not err in finding the Defendant to be a fourth felony offender. Therefore, this assignment of error is without merit.

---

[2]We find that pursuant to *State v. Johnson*, 884 So,2d 568, which overruled *Mims*, because the purse snatching charge arose on January 30, 1991, and the simple burglary charge arose on April 4, 1991, each conviction can be used as a separate offense to habitualize the Defendant even though he was convicted of both offenses on the same day.

**CONCLUSION**

This court affirms the Defendant's convictions. The Defendant's sentence, however, is vacated and the case remanded for a determination as to whether enhancement has been sought on one or both offenses.

**AFFIRMED IN PART; VACATED IN PART AND REMANDED FOR RESENTENCING.**